# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **Constance Murray,** | | **Case No. 5:24cv00639** |
| | **Plaintiff,** | |
| -vs- | | **JUDGE PAMELA A. BARKER** |
| | | **Magistrate Judge Amanda Knapp** |
| **Frank Bisignano, Commissioner of Social Security** | | **MEMORANDUM OPINION AND ORDER** |
| | **Defendants.** | |

This matter is before the Court on the Objections of Plaintiff Constance Murray ("Plaintiff" or "Murray") to the Report and Recommendation of Magistrate Judge Amanda Knapp regarding Plaintiff's request for judicial review of Defendant Commissioner of the Social Security Administration's ("Defendant" or "Commissioner") denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  (Doc. No. 12.)  For the following reasons, Plaintiff's Objections (Doc. No. 12) are overruled, the Report & Recommendation ("R&R") (Doc. No. 11) is accepted as set forth herein, and the Commissioner's decision is affirmed.

## I.      Procedural History

In January 2022, Murray filed her application for DIB**,** alleging a disability onset date of August 13, 2021.  (Doc. No. 6 (Transcript ["Tr."] ) at 18.)  The application was denied initially and upon reconsideration, and Murray requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On May 2, 2023, the ALJ conducted a telephone hearing at which Murray was represented by counsel and testified.  (*Id.*)  *See also* Tr. 33-51.  A vocational expert ("VE") also testified.  (*Id.*)

On May 18, 2023, the ALJ found that Murray was not disabled.  (Tr. 18-28.)  The ALJ determined that Murray suffered from the severe impairments of anxiety and post-traumatic stress disorder ("PTSD").  (Tr. 20.)  The ALJ found that Murray's impairments did not meet or medically equal the requirements of a listed impairment and that she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: routine tasks with detailed but uninvolved instructions, no contact with the public, occasional interactions with coworkers, occasional interactions with supervisors, and occasional changes in work processes or tasks.  (Tr. 21-26.)  The ALJ then concluded that Murray could not perform her past relevant work as a corrections officer, but could perform other jobs that existed in significant numbers in the national economy and, therefore, was not disabled.  (Tr. 26-28.)  The Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1-3.)

Plaintiff seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).  (Doc. No. 1.) The case was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(1) for a Report and Recommendation ("R&R").  In the R&R, the Magistrate Judge concludes that the ALJ's decision is supported by substantial evidence and recommends that the decision be affirmed. (Doc. No. 11.)  On April 1, 2025, Plaintiff filed the following Objections to the R&R:

I.    The Magistrate Judge erred in finding that the ALJ properly articulated the supportability factor when evaluating the medical opinions of the state agency psychological consultants.

II.   The Magistrate Judge erred in finding that the ALJ properly articulated the persuasiveness of the medical opinion of Anne Greenberg, M.D.

2

(Doc. No. 12.)  The Commissioner filed a Response on April 14, 2025.  (Doc. No. 13.)  The Court has conducted a *de novo* review of the issues raised in Plaintiff's Objections.

II.    **Evidence**

A.    **Personal and Vocational Evidence**

Murray was born in December 1970 and was 52 years-old at the time of her administrative hearing (Tr. 26, 33, 65), making her a "person closely approaching advanced age" under Social Security regulations.[1]  20 C.F.R. §§ 404.1563(d).  She has a high school education, completed two years of college, and is able to communicate in English.  (Tr. 26, 190.)  She has past relevant work as a corrections officer.  (Tr. 26.)

B.    **Relevant Medical Evidence[2]**

The record reflects that Murray attended appointments with her primary care provider, Larry Kramer, D.O., in November and December 2021.  (Tr. 484-486, 491-493, 498-499.)  She reported sleep disturbance, anxiety, and rapid heart rate/palpitations.  (*Id.*)  Upon examination, Dr. Kramer noted a blood pressure of 120/90 and a BMI of 36.00.  (Tr. 492-493.)  Dr. Kramer also noted that Murray was alert, had a normal mood/affect, normal range of motion, and normal heartbeat rhythm. (*Id.*)  He diagnosed Murray with anxiety/depression and "symptoms of rapid heartbeat," prescribed Melatonin, and referred her for an electrocardiogram ("ECG") and mental health evaluation.  (Tr.

---

[1] The regulations provide as follows: "Person closely approaching advanced age.  If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(d).

[2]  The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence that is necessary to resolution of the instant Objections.

486, 492-493.)  The record reflects Murray underwent an ECG in December 2021, which she reported was negative.  (Tr. 498.)

On December 16, 2021, Murray attended an initial mental health assessment with therapist Sandra Elliott.  (Tr. 471-80.)  Murray complained of stress, anxiety, and insomnia.  (Tr. 471.)  Her reported symptoms included rapid heartbeat, fear, panic, sweaty palms, thinking that "something is going wrong," excessive worrying, obsessions/compulsions, and difficulty falling asleep.  (Tr. 471, 474.)  Murray reported that these problems began after she witnessed a prison riot in July 2021 during which the inmates said they planned to rape the female guards.  (Tr. 471.)  Murray's mental status examination was normal, with a cooperative and friendly attitude, full range of mood/affect, normal speech, logical thought processes, fair insight, and intact judgment.  (Tr. 478-479.)  Ms. Elliot recommended that Murray attend weekly therapy sessions, medication management with Steven Levinson, M.D., and a psychological evaluation.  (Id.)

On January 10, 2022, Murray attended a psychiatric evaluation via video with Dr. Levinson.  (Tr. 454-62.)  Murray told Dr. Levinson about her traumatic experience at work in July 2021, when she was working as a corrections officer.  (Tr. 454.)  She stated that, after this incident, she became anxious and jittery.[3]  (Id.)  Murray complained of anxiety, stress, and poor sleep.  (Tr. 454-456.)  She reported symptoms of irritability, less interest in activities, avoidance of driving over bridges, discomfort around large groups of people, failure to care for her hair for two to three months, and experiencing feelings of hypervigilance.  (Id.)  She also endorsed decreased energy levels, increased anxiety with panic attacks, and difficulty falling asleep, performing activities of daily living, and

---

[3] Murray stated that she took a leave of absence from work and saw a doctor, who cleared her only for non-inmate work.  (Id.)  As none existed, she was medically discharged from her job.  (Id.)

4

concentrating.  (Tr. 455-56.)  On mental status examination, Dr. Levinson noted that Murray presented with an anxious and depressed mood, but found that she exhibited a neat appearance, cooperative attitude, normal speech, good eye contact, logical thought processes, intact judgment, and good insight with no impairments of cognition.  (Tr. 458-59.)  Dr. Levinson diagnosed Murray with PTSD and prescribed Sertraline 50 mg.  (Tr. 460.)

On February 1, 2022, Murray attended a telehealth appointment with Dr. Kramer.  (Tr. 504-505.)  She reported insomnia, depression, PTSD, goiter, heart palpitations, anxiety, and dysphagia.  (*Id.*)  Dr. Kramer completed disability forms for Murray and advised her to follow up with her mental health practitioner.  (*Id.*)

On May 4, 2022, Murray attended a telehealth appointment with Dr. Levinson.  (Tr. 463-66.)  She endorsed intermittent anxiety that was "not as intense and bearable."  (Tr. 463.)  Murray reported having dreams about her prison job but said she would not call them nightmares.  (*Id.*)  She said her therapist was helping her feel better, and she remained able to visit family, clean, and workout.  (*Id.*)  Murray described her sleep as "okay mostly" but said it varied depending on the day.  (*Id.*)  On mental status examination, Murray was appropriately groomed with good eye contact.  (Tr. 465.)  She displayed normal speech, appropriate insight and judgment, a logical and coherent thought process, relevant thought associations, and adequate attention and concentration.  (*Id.*)  Dr. Levinson further found that Murray presented with a congruent and appropriate mood/affect, and that she appeared less depressed and anxious.  (*Id.*)  Dr. Levinson continued Murray on Sertraline.  (*Id.*)

On June 15, 2022, Plaintiff saw Dr. Kramer for her annual physical exam.  (Tr. 507-10.)  Her review of systems was negative for chest pain and palpitations and positive for sleep disturbance and being nervous/anxious.  (Tr. 508.)  Murray had a blood pressure of 120/72 and a BMI of 35.88.  (Tr.

5

508-509.)  Her physical examination was unremarkable; notably, her heart rate and rhythm, range of motion, mood, and behavior were all normal.  (Tr. 509.)  Dr. Kramer diagnosed her with thyroiditis and ordered various tests for her thyroid.  (Tr. 510.)

Murray attended a telehealth medication management appointment with Dr. Levinson on November 3, 2022.  (Tr. 438-39.)  She had not seen him since May 4, 2022 because she did not realize she was supposed to schedule appointments.  (*Id*.)  Murray reported staying awake until 3:00 am because of "[p]roblem solving at night," but said that Melatonin helped. (*Id*.)  She asked to restart Sertraline, reporting that she "did better when on medicine."  (*Id*.) Dr. Levinson diagnosed Murray with PTSD, noting the following symptoms: "trauma, insomnia, anxiety, depression, feels unable to work and on disability private policy." (Tr. 439.)  He prescribed Sertraline 50 mg, once per day.  (*Id*.)

At a primary care appointment with Dr. Kramer on April 3, 2023, Plaintiff complained of being "under a lot of stress" and having a recent "vague episode of chest pain." (Tr. 514.) She requested an ECG.  (*Id*.)  Murray had a blood pressure of 120/88 and a BMI of 35.74.  (*Id.*)  Her physical examination was normal, including a regular heart rhythm, normal range of motion, and normal mood, affect, and behavior.  (Tr. 515.)  Dr. Kramer assessed anxiety and vague chest pain and ordered an ECG.  (*Id*.)  Murray underwent the ECG that same day, which was normal.  (Tr. 629-30.)

### C.    Opinion Evidence

#### 1.    Consultative Medical Examiner Anne Greenberg, M.D.

On May 19, 2022, Murray attended a consultative medical examination with Anne M. Greenberg, M.D.  (Tr. 351-60.)  In addition to interviewing and examining Murray, Dr. Greenberg reviewed a February 2022 Third Party Function Report and a written history form.  (Tr. 351-52 (referencing Tr. 224-31, 365-66)).  Dr. Greenberg noted that Murray reported "an extensive

6

psychiatric history with diagnoses including anxiety, panic attacks with palpitations, and depression" and PTSD.  (Tr. 351.)  Murray also reported that she saw a therapist weekly, saw a psychiatrist every two to three months, and recently started taking Sertraline.  (*Id.*)  Dr. Greenberg noted that Murray was also being treated for a goiter and hypothyroidism.  (*Id.*)  Regarding her activities of daily living and social activities, Murray told Dr. Greenberg that she lived alone and did not need help at home.  (Tr. 352.)  She indicated she was licensed to drive and continued to drive a car.  (*Id.*)  She also indicated that she could cook, clean, do laundry, shop, and care for her hygiene without assistance.  (*Id.*)  Murray reported that, to relax, she watches television, reads, listens to the radio, plays video games, and shops.  (*Id.*)

On physical examination, Murray weighed 246 pounds, and her blood pressure was 122/80.  (Tr. 352.)  She had normal gait and stance, could walk on her heels and toes without difficulty, and exhibited regular heartbeat with no reflex or sensory deficits, full strength, intact hand and finger dexterity, and 100% grip bilaterally.  (Tr. 352-54.)  She did not need help getting on and off the exam table, could rise from a chair without difficultly, had stable and nontender joints, and no had evident trigger points.  (Tr. 353.)  Dr. Greenberg noted that Murray's left and right knee x-rays were negative.  (Tr. 354.)  Dr. Greenberg diagnosed Murray with thyroid goiter, anxiety, panic attacks, depression, PTSD, history of AA, and nicotine use disorder.  (*Id.*)

Dr. Greenberg completed a checkbox-style medical source statement regarding Murray's ability to perform work-related activities.  (Tr. 355-60.)  She opined that Murray was limited to the following:[4] (1) occasionally lifting and carrying between 11 and 20 pounds; (2) frequently lifting and

---

[4] The Medical Source Statement form defines the term "frequently" as meaning "one-third to two-thirds of the time;" and the term "occasionally" as meaning "very little to one-third of the time."  (Tr. 355.)

carrying up to 10 pounds; (3) never lifting and carrying more than 20 pounds; (4) walking and standing up to one hour each without interruption and four hours total in an eight-hour workday; (5) sitting up to four hours without interruption and eight hours total in an eight-hour workday; (6) frequently reaching, handling, fingering, feeling, and pushing/pulling; (7) frequently using her feet for operation of foot controls; (8) occasionally climbing ladders or scaffolds and frequently climbing stairs and ramps; (9) frequently balancing, stooping, kneeling, crouching, and crawling; (10) occasionally tolerating exposure to unprotected heights, extreme cold, and extreme heat; (11) frequently tolerating exposure to moving mechanical parts, operating a motor vehicle, humidity and wetness, dusts, odors, fumes, and pulmonary irritants, and vibrations; and (12) tolerating up to a moderate noise level.  (Tr. 355-59.)  Dr. Greenberg opined that these limitations had lasted or would last for 12 consecutive months.  (Tr. 360.)

Notably, throughout the evaluation form, Dr. Greenberg left blank the sections asking her to "[i]dentify the particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain, etc.)" that supported her assessment of the above limitations.  (Tr. 355-60.)

### 2. State Agency Non-Examining Physicians

#### a. Physical

On July 5, 2022, state agency physician Charles Joseph Hubbard Jr., M.D., completed a medical evaluation based on Murray's medical records, including Dr. Greenberg's consultative examination report.  (Tr. 67.)  Dr. Hubbard opined that the record did not support a severe current functional impairment in relation to Murray's thyroid or heart/hypertension issues, and did not establish a medically determinable impairment in relation to her alleged loss of balance or insomnia.

8

(*Id.*) He further opined that Murray's obesity was not a severe impairment, noting: "BMI in mid-30's but normal exam at [Consultative Exam]." (*Id.*) In support of his findings, Dr. Hubbard observed that Dr. Greenberg's May 19, 2022 physical examination noted "normal gait/stance, strength, ROM, hand function." (*Id.*)

Upon reconsideration, on October 31, 2022, non-examining state agency medical consultant Pamela Irene Gianni, M.D., completed a medical evaluation based on updated records. (Tr. 76.) New treatment records included a May 4, 2022 endocrinology visit noting that Murray's goiter had grown, her recent thyroid was "low level," and no medicine was needed. (*Id.*) After reviewing the complete record, Dr. Gianni agreed with Dr. Hubbard's finding that Murray had no severe medically determinable physical impairments. (*Id.*)

### c.     Mental

On April 1, 2022, state agency psychological consultant Nancy Kennedy, Psy.D., completed a Psychiatric Review Technique ("PRT") (Tr. 68-69) and Mental RFC Assessment (Tr. 70-71). In the PRT, Dr. Kennedy found Murray had: (1) mild limitations in understanding, remembering, or applying information; (2) mild limitations in adapting or managing herself; (3) moderate limitations in interacting with others; and (4) moderate limitations in concentrating, persisting, or maintaining pace. (Tr. 68.)

In the Mental RFC, Dr. Kennedy offered a series of opinions regarding Murray's mental functional limitations based on her review of Murray's medical records. Specifically, Dr. Kennedy opined that Murray was "not significantly limited" in her abilities to: (1) carry out very short and simple instructions; (2) carry out detailed instructions; (3) sustain an ordinary routine without special supervision; (4) work in coordination with or in proximity to others without being distracted by them;

(5) make simple work-related decision; (6) ask simple questions or request assistance; (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (8) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  (Tr. 70.)  Dr. Kennedy further opined that Murray was "moderately limited" in her abilities to: (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; and (5) accept instructions and respond appropriately to criticism from superiors.  (*Id.*)

Dr. Kennedy further explained as follows:

> Based on the evidence of record, the claimant's statements are found to be partially consistent.  The claimant's basic memory processes are intact.  The claimant can understand, retain, and follow simple instructions (i.e., perform one and two step tasks).  The claimant can make simple decisions and would not require special supervision in order to sustain a work routine.  The claimant can perform simple, routine, repetitive tasks in a stable environment.
>
> The claimant is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene.  The claimant is capable of asking simple questions and accepting instruction.  The claimant is able to interact appropriately with the general public.  The claimant is able to get along with others in the workplace without distracting them.  The claimant can exercise appropriate judgment in the workplace.
>
> . . .
>
> The claimant is able to meet basic mental demands on a sustained basis despite the limitations resulting from the impairments.

(Tr. 71.)  On reconsideration, on October 20, 2022, state agency psychological consultant Richard W. Williams, Ph.D., agreed with Dr. Kennedy's PRT (Tr. 77-78) and mental RFC (Tr. 79-80).

## III.  Standards of Review

10

### A.     Review of Objections to R&R

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926 at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted); *Orr v. Kelly*, 2015 WL 5316216 at *2 (N.D. Ohio Sept. 11, 2015) (citing *Powell,* 1994 WL 532926 at *1).  *See also* Fed. R. Civ. P. 72(b)(3). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. §636(b)(1).

The Sixth Circuit has held that general objections to a Magistrate Judge's report and recommendation are insufficient.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).  *See also Brown v. City of Grand Rapids, Michigan*, 2017 WL 4712064 (6th Cir. 2017).  "A general objection, or one that merely restates the arguments previously presented, is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock,* 327 F.Supp.2d 743, 747 (E.D. Mich. 2004).  Rather, "[t]he objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."  *Miller,* 50 F.3d at 380 (citing *Howard v. Sec'y of Health & Human Servs*., 932 F.2d 505, 508–09 (6th Cir.1991)).  "'[B]are disagreement with the conclusions reached by the Magistrate Judge, without any effort to identify any specific errors in the Magistrate Judge's analysis that, if corrected, might warrant a different outcome, is tantamount to an outright failure to lodge objections to the R&R.'"  *Arroyo v. Comm'r of Soc. Sec*., 2016 WL 424939 at *3

11

(E.D. Mich. Feb. 4, 2016) (quoting *Depweg v. Comm'r of Soc. Sec.*, 2015 WL 5014361 at *1 (E.D. Mich. Aug. 24, 2015)) (citing *Howard,* 932 F.2d at 509).

Moreover, parties cannot "raise at the district court stage new arguments or issues that were not presented" before the magistrate judge's final report and recommendation. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("Courts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq*., permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate.") *See also Swain v. Comm'r of Soc. Sec.*, 379 Fed. Appx 512, 517-18 (6th Cir. 2010) ("A claim raised for the first time in objections to a magistrate judge's report is deemed waived."); *Nasser v. Comm'r of Soc. Sec.,* 598 F.Supp.3d 614, 621 (E.D. Mich. 2022), *aff'd,* 2022 WL 17348838 (6th Cir. Dec. 1, 2022).

B.     **Review of Social Security Decisions**

Under the Social Security Act, a disability renders the claimant unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can result in death or that can last at least twelve months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A).  Consideration of disability claims follows a five-step review process.[5] 20 C.F.R. § 404.1520.

---

[5] Under this five step review, the claimant must first demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)).

If substantial evidence supports the Commissioner's finding that the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently.  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted).  A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). Moreover, the Commissioner's decision must be affirmed even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

## IV.     Plaintiff's Objections to the R&R

---

activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience.  *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d).  Before considering step four, the ALJ must determine the claimant's residual functional capacity; i.e., the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 416.930(e).  At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).  *See Abbot*, 905 F.2d at 923.

A.    **First Objection:  Whether the ALJ properly articulated the supportability factor when evaluating the medical opinions of the state agency psychological consultants, Dr. Kennedy and Dr. Williams**

In her first Objection, Murray argues that the Magistrate Judge erred in finding that the ALJ properly articulated the supportability factor when evaluating the medical opinions of Dr. Kennedy and Dr. Williams.  (Doc. No. 12.)  Specifically, Murray asserts that the ALJ improperly "conflated the supportability and consistency analysis" by failing to "discuss any of the supporting explanations made by" Drs. Kennedy and Williams in the decision.  (*Id*.)  Rather, Murray maintains, "the ALJ's findings in the decision are vague and only refer to moderate limitations in mental functioning."  (*Id*. at PageID# 766.)  Murray argues that the ALJ's failure to explain her reasoning leads to "a lack of a logical bridge between the evidence and the RFC assessment."  (*Id*. at PageID# 767.)  Murray then asserts (summarily) that the ALJ's failure to properly consider the opinions of Drs. Kennedy and Williams is harmful because "[i]f the entirety of the limitations provided by Drs. Kennedy and Williams were given in a hypothetical to the [VE], it is likely that these limitations would have impacted the step five findings."  (*Id*. at PageID# 768.)  In response, the Commissioner argues that the Magistrate Judge properly found that, reading the decision as a whole, the ALJ sufficiently addressed the supportability and consistency of Dr. Kennedy's and Dr. Williams' opinions.  (Doc. No. 13.)

Under the social security regulations, an ALJ is not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  *See, e.g., Adams v. Comm'r*, 2023 WL 6366106 at * 2 (6th Cir. Sept. 28, 2023).  But the ALJ must articulate how "persuasive" she finds "all of the medical opinions and all of the prior administrative

medical findings in [the claimant's] case record." 20 C.F.R. § 404.1520c(b).  In evaluating the persuasiveness of a medical opinion, an ALJ is directed to consider several factors: the opinion's supportability and consistency; the treating source's relationship with the claimant and specialization; and other factors, such as the medical source's familiarity with other evidence relevant to the claim. 20 C.F.R. § 404.1520c(c).  Supportability and consistency are "the most important factors," and the ALJ must explain her consideration of them; the ALJ may, but is not required to, explain how she considered the other factors.  20 C.F.R. § 404.1520c(b)(2).  *See Adams*, 2023 WL 6366106 at * 2.

As to supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  In other words, "supportability" is the extent to which a medical source's *own* objective findings and supporting explanations substantiate or support the findings in the opinion.

As to consistency, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).  Thus, "consistency" is the extent to which a medical source's opinion findings are consistent with the evidence from *other* medical and nonmedical sources in the record.

Here, the ALJ considered Murray's subjective complaints at step four, including that she suffers from insomnia, panic attacks, irritability, fatigue, depression, elevated blood pressure and headaches.  (Tr. 23-24.)  The ALJ then discussed Murray's medical records, including her mental

health treatment records with Dr. Levinson and Ms. Elliott. (Tr. 24-25.) Based on her review of the record, the ALJ concluded as follows:

> The medical record shows the claimant has depression, anxiety and PTSD and is limited in her mental functioning (Exhibits 6F, 7F, 8F). However, overall, the claimant has had little mental health treatment. She had approximately 6 mental health appointments since 11/2021 (Exhibit 7F). This was due to claimant's misunderstanding that she had to schedule appointments. Despite very little mental health treatment, the record does not document any acute symptoms or episodes of decompensation leading to emergent or inpatient treatment. Additionally, the May 4, 2022, mental health treatment note indicates claimant had only intermittent anxiety and described it as less intense and was bearable (Exhibit 7F/34). The mental status examination on May 4, 2022, shows claimant was less depressed and anxious (Exhibit 7F/34). The mental health record generally shows normal examinations. Mental health records are generally limited to treatment plans and medication checks with no longitudinal therapy notes. Overall, the records indicate the claimant had improvement with treatment with some residual anxiety and some issues with rapid heartbeat or palpitations. She takes medications for anxiety and insomnia.

(Tr. 25.) The ALJ then discussed the medical opinion evidence. Regarding the opinions of Drs. Kennedy and Williams, the ALJ found as follows:

> Nancy Kennedy, Psy.D., and Richard Williams, Ph.D., found the claimant was moderately limited in mental functioning (Exhibits 1A, 3A). The undersigned finds these opinions are generally persuasive as they are consistent and supported by the medical examinations and claimant's testimony and reported daily activities.

(Tr. 26.) The ALJ assessed the following RFC: "the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: routine tasks with detailed but uninvolved instructions, no contact with the public, occasional interactions with coworkers, occasional interactions with supervisors, and occasional changes in work processes or tasks." (Tr. 22.)

In a lengthy and thorough R&R, the Magistrate Judge carefully considered Murray's argument that the RFC was not supported by substantial evidence because the ALJ found the opinions of Drs. Kennedy and Williams to be "generally persuasive" but failed to incorporate their opinions

16

that Murray was limited to performing one and two step tasks, making simple decisions, and working in a stable environment.  (Doc. No. 11 at PageID#s 742-757.)  The ALJ found that "[a]lthough the ALJ's analysis of the state agency psychological opinions was brief, it was informed by her prior written analysis of Ms. Murray's subjective reports and treatment records."  (*Id*. at PageID# 746.)  The Magistrate Judge explained that "[i]n context, ... the ALJ's explanation as to why she found the state agency's opinions 'generally persuasive' was sufficient to address supportability and consistency with the regulations."  (*Id*.)

The Magistrate Judge then considered Murray's argument that the ALJ violated Social Security Ruling ("SSR") 96-8p[6] when she adopted mental limitations in the RFC that conflict with Drs. Kennedy and Williams' proposed limitations without explaining why the conflicting limitations were not adopted.  (*Id*. at PageID# 748.)  The Magistrate Judge concluded that the limitation in the RFC to "occasional changes in work processes or tasks" did not conflict with Dr. Kennedy's and Dr. Williams' opinion that Murray could perform work in a "stable environment" and, therefore, the ALJ was not required under SSR 96-8p to provide further explanation for omitting the "stable environment" limitation from the RFC.  (*Id*. at PageID#s 754-756.)  The Magistrate Judge agreed with Murray, however, that the limitation in the RFC to "routine tasks with detailed but uninvolved instructions" did conflict with Dr. Kennedy's and Dr. Williams' opinion that Murray could perform "one and two step tasks."  (*Id*. at PageID#s 749-752.)  The Magistrate Judge further found that the ALJ failed to explain why she did not adopt that particular limitation, in violation of SSR 96-8p.  (*Id.)*

---

[6] SSR 96-8p requires an ALJ to consider all medical opinions in the RFC assessment and, where the assessment "conflicts with an opinion from a medical source," the ALJ "must explain why the opinion was not adopted." SSR 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at * 7  (July 2, 1996).

The Magistrate Judge concluded, however, that the ALJ's error was harmless.  First, the Magistrate Judge noted that Murray "does not explain how she was 'prejudiced on the merits' or 'deprived of a substantial right' by the ALJ's failure to comply with SSR 96-8p.  (*Id*. at PageID# 753.)  Second, the Magistrate Judge found that the error was harmless because the VE testified that Murray could perform the job of laborer, which the Dictionary of Occupational Titles ("DOT") defines as a "Reasoning Level 1" position that can be performed by a person who is able to "carry out simple one- or two-step instructions." (*Id*. at PageID#s 751-754)  Moreover, the Magistrate Judge noted that the VE testified there were over 400,000 laborer jobs in the national economy at Reasoning Level 1, which constitutes a "significant" number of jobs under the Sixth Circuit authority.[7]  (*Id*.)

The Court finds as follows.  As an initial matter, the Court notes that Murray has not objected to the Magistrate Judge's conclusions that the ALJ properly evaluated the *consistency* of Dr. Kennedy's and Dr. Williams' proposed limitations; i.e., the extent to which the opinions of Drs. Kennedy and Williams are consistent with the evidence from other medical and nonmedical sources in the record.  Rather, Murray objects only to the Magistrate Judge's finding that the ALJ properly articulated the *supportability* factor; i.e., the extent to which Dr. Kennedy's and Dr. Williams' own objective findings and supporting explanations substantiate or support the findings in their opinions. For the following reasons, the Court finds this objection to be without merit.

As the Magistrate Judge correctly notes, an ALJ is permitted to rely on previously articulated information to support her analysis of opinion evidence.  *See, e.g., Crum v. Comm'r of Soc. Sec*., 660 Fed. Appx. 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment

---

[7] The Magistrate Judge also found that Murray had waived any argument that the ALJ's failure to adopt a limitation to "simple decisions" violated SSR 96-8p.  (*Id*. at PageID# 749, fn 3.)

18

records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion"). *See also McCarty v. Comm'r of Soc. Sec.*, 2024 WL 4695900 at * 8 (N.D. Ohio Nov. 6, 2024) (noting that "the ALJ's decision must be read as a whole and with common sense"); *Bryant v. Comm'r of Soc. Sec.*, 2019 WL 5684456 at *10 (N.D. Ohio Nov. 1, 2019) ("Although the ALJ must discuss significant evidence supporting her decision and explain her conclusions with sufficient detail to permit meaningful review, there is no requirement that the ALJ incorporate all the information upon which she relied into a single paragraph.").

Moreover, "[w]hether a medical source's opinion is supported by the record may necessarily overlap with whether a medical source's opinion is consistent with the record, as the opinion's support will typically come from other evidence in the record." *Guthrie v. Comm'r of Soc. Sec*, 2023 WL 6258259 at * 3 (N.D. Ohio Sept. 26, 2023). *See also Rambo v. Comm'r of Soc. Sec.*, 2024 WL 3813417 at * 7 (N.D. Ohio July 9, 2024), *report and recommendation adopted by* 2024 WL 4532777 (N.D. Ohio Oct. 21, 2024); *Bigford v. Comm'r of Soc. Sec.,* 2024 WL 3083251 at * 3 (W.D. Mich. June 21, 2024) ("The ALJ's specific references to portions of the medical record which undercut Nwankwo, Grubelich, and Abbasi's opinions evidence her consideration of the supportability and consistency factors. This is sufficient, even if the ALJ did not specifically code a particular portion of the record to 'consistency' or 'supportability.'") Thus, even where an ALJ appears to conflate the terms "supportability" and "consistency," courts have found no error where the court is able to follow the ALJ's reasoning and is satisfied that the ALJ properly performed the requisite analysis of these factors. *See, e.g., Potts v. Comm'r of Soc. Sec.*, 2024 WL 4660850 at * 8-9 (N.D. Ohio Nov. 4, 2024), *report and recommendation adopted by* 2025 WL 1427632 (N.D. Ohio May 19, 2025).

Reading the ALJ decision herein as a whole, the Court finds that the ALJ adequately explained her consideration of the supportability factor when finding that the opinions of Dr. Kennedy and Dr. Williams were "generally persuasive." Courts in this Circuit have found that "'supportability' concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, 2021 WL 1697919 at * 7, n. 6 (N.D. Ohio April 29, 2021). *See also Rambo*, 2024 WL 3813417 at * 7. Here, in their respective opinions, Dr. Kennedy and Dr. Williams noted that Murray had been diagnosed with PTSD, had no history of in-patient psychiatric admission, and had been prescribed psychotropic medications. (Tr. 71, 80.) Dr. Kennedy and Dr. Williams also noted that Murray's activities of daily living (or "ADLs") "appear to be adequate from a psychiatric perspective." (*Id.*) Dr. Kennedy and Dr. Williams then referenced Dr. Levinson's largely normal mental health examination findings from Murray's January 10, 2022 appointment. (*Id.*) Specifically, Dr. Kennedy and Dr. Williams noted that Dr. Levinson found that, while Murray exhibited depressed/anxious mood, she was also alert and oriented and presented with a neat appearance, cooperative attitude/behavior, normal speech, good eye contact, logical thought process, and good judgment and insight with no impairments of cognition. (*Id.*) *See also* Tr. 458-59.

The ALJ found the opinions of Dr. Kennedy and Dr. Williams that Murray is moderately limited in mental functioning to be "generally persuasive" because "they are consistent and supported by the medical examinations and claimant's testimony and reported daily activities." (Tr. 26.) Certainly, it would have been preferable for the ALJ to have included a more complete discussion of supportability in the paragraph of her decision that discusses her analysis of Dr. Kennedy's and Dr. Williams' opinions. However, the ALJ fully discussed the medical record just prior to her analysis

20

of Dr. Kennedy's and Dr. Williams' opinions.  (Tr. 24-25.)  Among other things, the ALJ summarized Murray's January 2022 mental health assessment (Tr. 24), which (notably) is also expressly referenced by Drs. Kennedy and Williams as an "additional explanation" for their opinions.  (Tr. 71, 80.)  The ALJ also noted (as did Drs. Kennedy and Williams) that (1) Murray had no history of inpatient mental health treatment (Tr. 25); (2) her "mental health record generally shows normal examinations"  (Tr. 25); and (3) Murray reported a broad range of activities of daily living, including managing money, paying bills, shopping, driving, and reading (Tr. 22).

Thus, when reading the decision as whole, the Court finds that the ALJ's overall discussion of Murray's history of mental health treatment, largely normal January 2022 mental health assessment findings, and reported range of activities of daily living, is sufficient to adequately articulate her supportability assessment with regard to the opinions of Drs. Kennedy and Williams.  In other words, by reading the decision in its entirety, the Court is able to follow the ALJ's reasoning and is satisfied that the ALJ properly performed the requisite analysis of the supportability factor with regard to the state agency psychologists' opinions.

In so finding, the Court rejects Murray's argument that the Sixth Circuit's decision in *Kinney v. Comm'r of Soc. Sec.*, 2024 WL 2273365 (6th Cir. May 20, 2024) requires a different result.  In *Kinney*, the ALJ found a medical opinion to be "consistent with and supported by the record as a whole" and "persuasive," but then omitted a limitation contained therein requiring flexible breaks without explanation.  *Kinney,* 2024 WL 2273365 at *5.  The Sixth Circuit determined that "although the ALJ was not required to incorporate the flexible break scheduling limitation, the failure to do so without explaining its omission warrant[ed] reversal" given the fact that the ALJ found the medical examiner's opinion to be persuasive.  *Id*. at * 9.

21

The Court finds *Kinney* to be distinguishable from the instant case for several reasons.  First, unlike *Kinney*, the ALJ in the instant case did not state that she found the opinions of Drs. Kennedy and Williams fully persuasive.  Rather, the ALJ found that Dr. Kennedy's and Dr. Williams' opinions were only "generally persuasive."  Courts have distinguished *Kinney* on this basis.  *See, e.g., Haahr v. Comm'r of Soc. Sec.*, 2024 WL 5242214 at * 4 (N.D. Ohio Dec. 30, 2024) (distinguishing *Kinney* because "here the ALJ did not state he found the medical opinion persuasive, but only assigned it 'some weight'").

Second, and notably, in *Kinney*, the VE testified on cross-examination that a flexibility limitation would be considered an accommodation.  *See Kinney v. Comm'r of Soc. Sec.*, 2023 WL 5042599 at * 6 (N.D. Ohio June 12, 2023).  *See also Kinney v. Comm'r of Soc. Sec.*, Case No. 3:22cv1125 (N.D. Ohio) (Doc. No. 5 at Tr. 73.)  Thus, the ALJ's failure to include a flexible break limitation in the RFC could not be considered harmless error.  In the instant case, however, the Magistrate Judge concluded that, even if the ALJ erred in failing to include Dr. Kennedy's and Dr. Williams' "one and two step task" limitation in the RFC, any such error was harmless because the VE testified that Murray could perform the job of laborer, which the DOT defines as a "Reasoning Level 1" position that can be performed by a person who is able to "carry out simple one- or two-step instructions."  (Doc. No. 11 at PageID#s 751-754.)  The Magistrate Judge further noted the VE's testimony that there were over 400,000 laborer jobs in the national economy at Reasoning Level 1, and found that this constitutes a "significant" number of jobs under the Sixth Circuit authority.  (*Id.*)

Murray does not object to the Magistrate Judge's conclusion that a district court may undertake a harmless error analysis in this context.  Nor does she object to the Magistrate Judge's findings that (1) Dr. Kennedy's and Dr. Williams' opinions that Murray is limited to "one and two

step tasks" is generally equivalent to the DOT language for Reasoning Level 1 jobs; (2) the job of laborer is a Reasoning Level 1 job with over 400,000 positions nationally available; and (3) that a significant number of jobs therefore exist in the national economy that Murray could perform even with a one to two step task limitation.  Thus, any objections to the above findings are waived.

Instead, Murray argues that the ALJ's "failure to properly consider [Dr. Kennedy's and Dr. Williams'] opinions when assessing the RFC at step four and then when proffering the hypotheticals to the [VE] during the hearing leads to harmful error" because "if the entirety of the [proposed] limitations ... were given in a hypothetical to the [VE], it is likely that these limitations would have impacted the step five findings." (Doc. No. 12 at PageID# 768.) Murray's argument is without merit. As an initial matter, Murray has not raised any specific objection to the Magistrate Judge's conclusion that the limitation in the RFC to "occasional changes in work processes or tasks" does not conflict with Dr. Kennedy's and Dr. Williams' opinion that Murray could perform work in a "stable environment."  Nor does Murray object to the Magistrate Judge's finding that she waived any argument regarding the ALJ's failure to adopt a limitation to "simple decisions" in the RFC.  Thus, Murray has waived any argument that the ALJ's failure to present a hypothetical to the VE that included the "entirety of the limitations" proposed by Drs. Kennedy and Williams (i.e., that included their proposed "stable environment" and "simple decisions" limitations) constituted harmful error.

Rather, at best, Murray is limited to arguing that the ALJ's failure to include the "one and two step tasks" limitation in a hypothetical to the VE constituted harmful error.  Murray failed to raise this argument, however, in her briefing before the Magistrate Judge and she may not raise it now for the first time in her Objection.  *See Murr*, 200 F.3d at 902, n.1 (noting that parties may not  raise at the district court stage "new arguments or issues that were not presented to the magistrate."); *Swain*,

379 Fed. Appx at 517-18 ("A claim raised for the first time in objections to a magistrate judge's report is deemed waived.")  And, even if she could, Murray fails entirely to acknowledge or address the Magistrate Judge's finding that, even if the ALJ had included a "one to two step task" limitation in the RFC, there would be still over 400,000 laborer jobs available in the national economy that Murray would perform.  Thus, and for all the reasons discussed above, Murray's "harmful error" argument is rejected.

Accordingly, the Court finds that Murray's first Objection is without merit and overruled.

**B.  Second Objection: Whether the Magistrate Judge erred in finding that the ALJ properly articulated the persuasiveness of consultative examiner Dr. Greenberg**

In her second Objection, Murray challenges the Magistrate Judge's conclusion that the ALJ properly evaluated Dr. Greenberg's opinion.  (Doc. No. 12 at PageID# 768.)  Murray first maintains that the Magistrate Judge erred in finding that the ALJ properly discounted Dr. Greenberg's opinion on the basis that Murray "has no positive clinical findings on examination."  (*Id*.)  Murray maintains that this statement is not supported by substantial evidence in light of Murray's history of abnormal blood pressure and respiratory rate readings.  (*Id*.)  Murray next asserts that the ALJ's rejection of Dr. Greenberg's opinion is flawed because she failed to appropriately consider certain physical symptoms that are associated with her panic attacks.  (*Id*.)  She argues that "these physical symptoms are consistent with the reduced exertional level as assessed by Dr. Greenberg and should have been discussed [by the ALJ] when evaluating the consistency of her opinion."  (*Id*. at PageID# 770.)  In response, the Commissioner asserts that the R&R was well reasoned and well supported by law.  (Doc. No. 13.)

At step four, the ALJ discussed the medical evidence regarding Murray's physical impairments as follows:

24

Claimant was scheduled to return to work on November 16, 2021, but had rapid heartbeat and anxiety and asked for a letter stating she could not work (Exhibits 8F). She also complained of depression and sleep disturbance.  Her primary care physician reported on November 20, 2021 that the claimant had a normal examination. He diagnosed claimant with anxiety, but noted this was stable, and had symptoms of rapid heartbeat. She was given melatonin (Exhibit 6F). Exam on November 30, 2021 showed positive palpitations but normal mood and affect (Exhibits 6F, 8F). On February 1, 2022 claimant had disability forms filled out by her primary care physician due to insomnia, depression, PTSD, goiter, heart palpitations, and dysphagia (Exhibit 8F/11).  Primary care treatment notes in April 2023 indicate claimant was under stress, had blood pressure of 114/74, and had normal cardio and pulmonary examination.  She was diagnosed with vague chest pain (Exhibit 8F/33).

(Tr. 24.)  The ALJ then evaluated Dr. Greenberg's opinion, finding it to be "not persuasive" as follows:

Anne Greenberg, M.D., completed a consultative examination on May 19, 2022 (Exhibit 5F).  She reported claimant had an extensive psychiatric history with diagnoses of anxiety, panic attacks with palpitations, and depression. She noted clamant's PTSD was diagnosed recently and that claimant goes to the psychiatrist 2-3 times a month.  Dr. Greenberg stated claimant was also treated for goiter, with a needle aspiration planned, and hypothyroidism.  She reported the claimant drank 1 ½ bottles of wine a day, but stopped in 2022.  On examination Dr. Greenberg found the claimant weighed 256 pounds, had normal gait and stance, full squat, no reflex or sensory deficits, full strength, and 100% grip.  Bilateral knee x-rays were negative. Claimant was diagnosed with thyroid goiter, anxiety, panic attacks, depression, PTSD, history of AA and nicotine use disorder.  In a medical source statement, Dr. Greenberg found the claimant could perform a range of light work with lifting and carrying limited to 10-20 pounds, standing and walking limited to 4 hours out of 8, 1 hour at a time, and postural and environmental limitations (Exhibits 5F).  **The undersigned finds this opinion is not persuasive as it is internally inconsistent and is not supported by the other evidence of record.  The claimant has no positive clinical findings on examination, yet Dr. Greenberg limits her to light work.  The record also shows no medical examination findings in the longitudinal treatment records to support a limited to light work (Exhibits 6F, 8F).**

(Tr. 25-26) (emphasis added). The ALJ then found that the opinions of state agency physicians Dr. Hubbard and Dr. Gianni that Murray "had no severe physical impairments" were persuasive "as they are consistent with the medical examination findings."  (Tr. 26.)  As noted above, the ALJ did not include any exertional (i.e., physical) limitations in the RFC.  (Tr. 22.)

25

In the R&R, the Magistrate Judge first found that Murray "has failed to show that the ALJ misrepresented the consultative examination report when she observed that the report reflected 'no positive clinical findings on examination.'" (Doc. No. 11 at PageID# 759.) The Magistrate Judge noted that, while the ALJ's analysis did not specifically reference Murray's blood pressure or respiratory rate, the ALJ "was not required to discuss each piece of data in [her] opinion, so long as [she] consider[ed] the evidence as a whole and reach[ed] a reasoned conclusion.'" (*Id*.) (quoting *Boseley v. Comm'r of Soc. Sec*., 397 Fed. Appx 195, 199 (6th Cir. 2010)). The Magistrate Judge further observed that Murray reported a medical history "[n]egative for hypertension, diabetes, heart attack, other heart disease, asthma, emphysema, seizures, or head injury" (Tr. 351) and that Dr. Greenberg did not diagnose any physical impairments relating to Plaintiff's weight, blood pressure, or respiration (Tr. 354). Considering the largely normal physical examination findings recorded in Dr. Greenberg's Report (Tr. 352-54), the Magistrate Judge found that "substantial evidence supported the ALJ's observation that the consultative examination report contained 'no positive clinical findings on examination.'" (Doc. No. 11 at PageID# 759.)

The Court agrees with the Magistrate Judge. While Murray reported a history of "panic attacks with palpitations" (Tr. 351), Dr. Greenberg's physical examination findings were normal, including that Murray was in no acute distress with regular heart rhythm, normal chest and lungs, normal pulses, and no edema or muscle atrophy. (Tr. 353.) Additionally, as the Magistrate Judge correctly notes, Murray did not report a medical history or past diagnosis of hypertension or heart disease, and Dr. Greenberg did not diagnose either of these conditions. (Tr. 351, 354.) This is consistent with the medical record as a whole, which largely shows normal physical examination findings, including normal heartbeat rhythm in November 2021 (Tr. 492-493); normal heart rate and

26

rhythm and normal blood pressure in June 2022 (Tr. 508-509); and normal ECGs in December 2021 and April 2023 (Tr. 498, 629-630).  In light of the above, the Court finds that the ALJ's determination that Dr. Greenberg's report was not persuasive because Murray "has no positive clinical findings on examination" is supported by substantial evidence.[8]

The Magistrate Judge next rejected Murray's argument that the ALJ improperly overlooked her mental health records when evaluating the persuasiveness of Dr. Greenberg's opinion.  (Doc. No. 11 at PageID# 760-764.)  The Magistrate Judge noted that, earlier in the decision, the ALJ explicitly considered Murray's reports of panic attacks and physical examination findings of elevated blood pressure, palpitations, and rapid heartbeat.  (*Id*.)  The Magistrate Judge further observed that "the ALJ additionally considered and found persuasive the opinions of the state agency consultants [i.e., Dr. Hubbard and Dr. Gianni] that Ms. Murray's physical medically determinable impairments were not severe."  (*Id*.)  Based on the above, the Magistrate Judge found that substantial evidence supported the ALJ's finding that "no medical examination in the longitudinal records" supported a limitation to light work.  (*Id*.)

Once again, the Court agrees with the Magistrate Judge.  Substantial evidence supports the ALJ's finding that Dr. Greenberg's report was not persuasive because the record does not contain medical examination findings that support restricting Murray to light work.  As noted above, the ALJ acknowledged Murray's complaints of elevated blood pressure, rapid heartbeat, and sweaty hands

---

[8] The Court notes that Murray asserts (summarily) that she had an abnormal blood pressure and respiratory rate during her consultative examination.  (Doc. No. 12 at PageID# 768.)  Dr. Greenberg recorded Murray's blood pressure as 122/80 and her respiratory rate as 18/minute.  (Tr. 352.)  Murray cites no evidence to support her assertion that these readings are "abnormal."  In fact, the Court notes in passing that the Cleveland Clinic's website indicates that a normal blood pressure for an adult is 90/60 to 120/80, and a normal respiratory rate is 12 to 18 breaths per minute. *See* https://my.clevelandclinic.org/health/articles/10881-vital-signs.

associated with her panic attacks.  (Tr. 23-25.)  The ALJ also acknowledged that Murray was positive for palpitations in November 2021.  (Tr. 24.)  However, the ALJ noted that Murray had a normal cardio and pulmonary examination in April 2023.  (*Id*.)  Additionally, as noted above, the medical record as a whole largely shows normal physical examination findings, including normal heartbeat rhythm in November 2021 (Tr. 492-493); normal heart rate and rhythm and normal blood pressure in June 2022 (Tr. 508-509); and normal ECGs in December 2021 and April 2023 (Tr. 498, 629-630). And Dr. Hubbard and Dr. Gianni both concluded that Murray did not have any severe medically determinable impairments.  (Tr. 67, 76.)

While Murray cites evidence indicating that she occasionally exhibited a rapid heart rate, shortness of breath, and elevated blood pressure, she has failed to demonstrate that the ALJ's conclusion is not supported by substantial evidence. The substantial evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  "Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

For all the reasons set forth above, the Court finds that substantial evidence supports the ALJ's decision that Dr. Greenberg's opinion was not persuasive because Murray's "medical examination findings in the longitudinal treatment records" do not support a limitation to light work.  Murray's second Objection is, therefore, without merit and overruled.

28

## V.     Conclusion

For all of the foregoing reasons, Plaintiff's Objections (Doc. No. 12) are overruled.  The Court accepts the Magistrate Judge's Report and Recommendation (Doc. No. 11) as set forth herein, and the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**


    *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  August 7, 2025                                                     U. S. DISTRICT JUDGE

29